No. 25-1311

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

D.V.D., *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security, *et al.*,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## EMERGENCY MOTION FOR STAY PENDING APPEAL   AND IMMEDIATE ADMINISTRATIVE STAY

———————————

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW ENSIGN
*Deputy Assistant Attorney General*

EREZ REUVENI
*Acting Deputy Director*

ELIANIS N. PEREZ
*Assistant Director*

AYSHA IQBAL
DANIEL CAPPELLETTI
*Trial Attorneys*

MATTHEW P. SEAMON
MARY L. LARAKERS
*Senior Litigation Counsel*
U.S. Department of Justice,
Civil Division
Office of Immigration
Litigation
P.O. Box 868,
Ben Franklin Station
Washington, DC 20044

## INTRODUCTION

The district court's universal injunction entered today is not even arguably a defensible order. The injunction prohibits removing non-parties to third-party countries. But that injunction is squarely and incontestably barred by 8 U.S.C. § 1252(f). And even assuming that point was ever debatable, the Supreme Court's decision in *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022) made the applicability of that bar beyond question. The government specifically argued that § 1252(f) barred the requested relief here. But the district court neither cited the provision nor *acknowledged* the argument, let alone did it attempt to explain how its order could comport with § 1252(f). The plain text of the law and precedent interpreting it underscore the unlawfulness of the district court's order.

In addition to § 1252(f), § 1252(a)(5), (b)(9), and § 1252(g) all independently bar this suit and the TRO entered. These provisions, *inter alia,* channel *all* challenges to orders of removal into the courts of appeals—and thereby divests the district courts of jurisdiction to hear challenges like this one. But, once again, the district court did not even endeavor to explain how its universal injunction could be squared with those provisions.

Finally, the universal scope of the injunction here is unlawful and an abuse of discretion. The district court did not offer *even a single word of explanation* as to why its nationwide scope was warranted. Even assuming that nationwide injunctions

1

are ever appropriate, ones that are purely *ipse dixit*—imposed without scintilla of explanation—such as the one imposed here do not withstand scrutiny. And they are plainly an abuse of discretion.

The district court's universal injunction is unlawful, the government will suffer tremendous irreparable harm absent a stay, and the balance of equities favors interim relief, so this Court should grant a stay pending appeal. Moreover, given the obvious and egregious nature of the errors below and immediate harms to the government, this Court should further grant an immediate administrative stay while it considers a full stay pending appeal.

## FACTUAL BACKGROUND

The named Plaintiffs are four aliens with final orders of removal resulting from proceedings in which they were notified that they could be deported to a designated country of removal or, potentially, a third country of removal. ECF No. 1, Compl. ¶ 1. Plaintiff E.F.D. is currently in ICE custody. Compl. ¶ 76; ECF No. 31-1 ¶ 19. Plaintiffs D.V.D. and M.M. have been released from ICE custody. ECF No. 31-1 ¶¶ 33, 38. Plaintiff O.C.G. was removed to Mexico on February 21, 2025. *Id.* ¶ 13. On March 23, 2025, Plaintiffs brought the instant suit and putative class action alleging that the Department of Homeland Security (DHS) violates the Immigration and Nationality Act (INA), its regulations, and the Due Process Clause of the Fifth Amendment by removing, or seeking to remove, the aliens to a third

country without first providing them with notice or opportunity to assert a claim that they fear persecution or torture if removed to that third country. *See generally* Compl. On that same date, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunctive Relief and a Motion for Class Certification. ECF Nos. 4, 7. A few hours ago, the Court granted Plaintiffs' Motion and issued an injunction prohibiting Defendants from removing Plaintiffs D.V.D., M.M., and E.F.D., to third countries until the Plaintiffs had a "meaningful opportunity" to raise CAT claims. The order inexplicably went on to extend its scope to cover *any* alien subject to a final order of removal, until Defendants provide written notice of the third country to where the alien may be removed and an opportunity to lodge a CAT claim. ECF No. 34.

## ARGUMENT

A stay is clearly merited here. Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The district court lacked jurisdiction over this case, misunderstood the

merits, and entered overbroad relief. The merits and the equities all lean in favor of a stay.

### A. The District Court's Order Is Appealable

In the unique circumstances of this case, the district court's order is immediately appealable under 28 U.S.C. § 1292(a)(1) despite being labeled a TRO. "[A]n order [that] has the 'practical effect' of granting or denying an injunction" "should be treated as such for purposes of appellate jurisdiction." *Abbott v. Perez*, 585 U.S. 579, 594 (2018); *see Fryzel v. Mortgage Elec. Registration Sys., Inc.*, 719 F.3d 40, 43 (1st Cir. 2013) ("The nature of an order is the product of its operative terms and effect, not its vocabulary and label."). This Court has explained that, in addition to an order's practical effects, the order's duration and the existence of adversarial presentation inform whether an order is subject to immediate appeal. *See Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 27 (1st Cir. 2020); *San Francisco Real Estate Investors v. Real Estate Investment Trust of Am.*, 692 F.2d 814, 816 (1st Cir. 1982).

The Supreme Court has held that an order is properly regarded as an appealable injunction if it has "'serious, perhaps irreparable consequences' that [a party] can 'effectually challenge' only by an immediate appeal." *Carson* v. *American Brands, Inc.*, 450 U.S. 79, 90 (1981). And the Supreme Court has further recognized that, in determining appealability, courts of appeals owe "special solicitude" "to

4

claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers." *Nixon* v. *Fitzgerald*, 457 U.S. 731, 743 (1982). Under those precedents, the Executive Branch must be able to appeal orders that "enjoin the President in the performance of his official duties," *Mississippi* v. *Johnson*, 4 Wall. 475, 501 (1866), or that restrain the exercise of his "conclusive and preclusive" Article II powers, *Trump* v. *United States*, 603 U.S. 593, 607 (2024) (citation omitted). Thus, a TRO may be appealable when it "deeply intrude[s] into the core concerns of the executive branch," as this one manifestly does. *OPM* v. *American Federation of Government Employees*, 473 U.S. 1301, 1305 (1985) (Burger, C.J., in chambers) (citation omitted).

Historically, TROs that transgress those constitutional principles have been rare. But when they occur, an immediate appeal is essential to preserving the constitutional structure. The structure of our Constitution and the separation of powers requires that "each department" have the "constitutional means" "to resist encroachments of the others." *The Federalist* No. 51, at 349 (Jacob E. Cooke ed., 1961) (James Madison). The President can resist congressional encroachments by vetoing bills and declining to enforce unconstitutional statutes. But his defense against judicial encroachments is to appeal. If the appellate courts refuse to hear such appeals, district courts could whittle away Article II's vision of "an independent Executive" for a up to a month without any practical check. See *Trump*, 603 U.S. at

613 (citation omitted). The Framers envisioned an Executive Branch that would pursue "energetic, vigorous, decisive, and speedy execution of the laws" and "deemed an energetic executive essential to 'the protection of the community against foreign attacks,' 'the steady administration of the laws, 'the protection of property,' and 'the security of liberty.'" *Id.* at 610 (citation omitted). They certainly did not envision that district courts could replace energy with mandatory delay and stop the President from fulfilling his constitutional responsibilities so long as they label their orders TROs *particularly* in the foreign affairs context.

Here, the order's practical effect is profound. It applies nationwide to all aliens with final orders of removal whom the government seeks to remove to a third country. It has an immediate and irreparable impact on the President's ability to negotiate the removal of aliens to third countries. And it does so without any specific expiration date—thus being a preliminary injunction in all but name. The district court issued this universal injunction without mentioning let alone explaining the injunction's compliance with the strictures of Federal Rule of Civil Procedure 23 nor of the standard attendant on the issuance of nationwide injunctions. Indeed, the injunction is broader than the relief even sought by plaintiffs because it it applies to all aliens with final orders of removal—not just members of the putative class. The order thus provides Plaintiffs with "some or all of the relief" that they ultimately seek in the litigation and is more akin to an appealable preliminary injunction than a

temporary restraining order. *Fryzel*, 719 F.3d at 43. The government simply cannot wait until the district court's April 10, 2025, preliminary injunction hearing to vindicate its rights. The irreparable harms to the Executive Branch are already accruing, as the district court has usurped core executive powers and imposed tremendous practical effects on the President's authority to manage foreign affairs, including with allies who may no longer wish to accept aliens who are not citizens.

Prohibiting the government from removing any alien with a final order of removal to a third country unless and until it complies with additional procedures violates the separation of powers and undermines the President's authority to remove aliens. It is precisely the sort of "serious, perhaps irreparable consequences that [the government] can effectually challenge only by an immediate appeal." *Carson v. American Brands, Inc.*, 450 U.S. 79, 90 (1981) (quotations omitted).

Alternatively, if this Court were to conclude that the district court's order is unappealable, the Court should instead treat this motion as a petition for writ of mandamus and grant the writ. *In re Providence J. Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002). The district court's extraordinary order readily satisfies the standard to grant mandamus. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). First, if the district court's order is not appealable, then there is "'no other adequate means,'" *id.* at 380-381, for the government to vindicate the President's authority under Article II to exercise the entire Executive power of the United States. Second,

given the clarity of the district court's violation of governing statutes and precedents, Defendants' "right to issuance of the writ is clear and indisputable," *Cheney*, 542 U.S. at 381 (quotation marks omitted). And finally, the issuance of the writ "is appropriate," *id.*—indeed, it is necessary—to protect our constitutional structure by safeguarding the President's prerogative over matters of foreign affairs against intrusion by the Judicial Branch.

**B. Defendants are Likely to Prevail on the Merits.**

**1.  The nationwide injunction is a clear violation of 8 U.S.C. § 1252(f)(1).**

The district court's order contains multiple, serious, legal errors that justify an immediate stay of section 2.b of the order. First, the district court's universal injunction is prohibited by 8 U.S.C. 1252(f)(1), which provides that:

> "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated."

8 U.S.C. § 1252(f)(1) (emphasis added). The Supreme Court has held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1231, the provision the district court's order impacts, is specifically one of

the statutory provisions § 1252(f)(1) covers. *Aleman Gonzalez*, 596 U.S. at 544-550 (overturning preliminary injunction that enjoined the government from exercising its detention authority under § 1231(a) unless it provided additional procedures not required). As the Supreme Court held in *Aleman Gonzalez*, to "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. 596 U.S. at 549.

Here, the district court's order "ENJOIN[S] and RESTRAIN[S]" Defendants from removing any individual subject to a final order of removal from the United States to a third country unless and until certain additional procedures are provided. ECF No. 34. This has the effect of enjoining or restraining the Department of Homeland Security's ("DHS") implementation of its statutory authority to remove aliens to third countries pursuant to 8 U.S.C. §§ 1231(b)(1), (b)(2). But 8 U.S.C. § 1252(f)(1) explicitly bars such relief. Indeed, Plaintiffs concede, ECF No. 1 ¶¶ 30-33, that relevant statutes expressly grant DHS the authority to remove individuals to various alternate or third countries. 8 U.S.C. § 1231(b)(1), 1231(b)(2); *see Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). Thus, an injunction that prevents DHS from exercising its clear statutory authority to effectuate removals to third countries unquestionably prevents the operation of that statute and so constitutes an order "restraining" federal official. *Aleman Gonzalez*, 596 U.S. at 550; *Hamama v. Homan*, 912 F.3d 869, 879 (6th Cir. 2018) (holding that injunction

violated § 1252(f)(1) because it "created out of thin air a requirement . . . that does not exist in the statute). Because § 1252(f)(1) eliminates the district court's authority to issue coercive orders enjoining or restraining DHS's implementation of § 1231(b), the district court lacked jurisdiction to issue its injunction enjoining DHS's removal authority on a nationwide, non-individualized basis.[1]

**2. The district court's order violates several statutory jurisdiction-stripping provisions.**

Additionally, the district court lacked jurisdiction to enter its order pursuant to 8 U.S.C. § 1252(a)(4), (5), (b)(9), and (g). Section 1252(g) bars claims arising from the decision or action to "execute removal orders." Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 (as well as review pursuant to the All Writs Act and Administrative Procedure Act) of claims arising from a decision or action to "execute" a final order of removal.  *See*

---

[1] Given the clear and unambiguous text of § 1252(f) and the district court's complete failure to address how its injunction could interact with/survive that provision at all, the operational effects of its order is ambiguous.

*Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999).

The district court's order clearly prevents Defendants' actions to execute the removal orders of named Plaintiffs and of "any individual subject to a final order of removal from the United States to a third country" until Defendants comply with additional requirements, including providing aliens a "meaningful opportunity" to submit an application for relief to the immigration court. ECF No. 34 at 2. But numerous courts of appeals have consistently held that claims seeking a stay of removal—even temporarily to assert other claims to relief—are barred by § 1252(g). *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order.  If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *E.F.L. v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021) (rejecting the argument that jurisdiction remained in similar circumstances because petitioner was challenging, DHS's legal authority as opposed to its "discretionary decisions"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the

statute") (emphasis in original); *Hamama*, 912 F.3d at 874–77 (vacating district court's injunction staying removal, concluding that § 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim.").[2]

Thus, the district court's order is predicated upon exercising the exact sort of judicial review that has been rejected by numerous courts of appeals, and on a breathtaking scale. The order prevents the removal of aliens to third countries on the assertion that their removal, at least temporarily, may be unlawful. But § 1252(g) contains no exception for such claims in district courts regardless of their nature or merit. Therefore, the district court was without jurisdiction to enter its order.

The district court also lacked jurisdiction to enter its injunction because of 8 U.S.C. § 1252(a)(5) and (b)(9). Section 1252(b)(9) provides that judicial review of "*all* questions of law and fact" arising from "*any* action taken or proceeding brought to remove an alien from the United States under this subchapter" is available "*only*

---

[2] This Court's decision in *Kong v. United States,* 62 F.4th 608, 617 (1st Cir. 2023) does not alter this analysis. In *Kong,* this Court only held that "§ 1252(g) preserved jurisdiction over challenges like Kong's to the legality of his detention" and was also brought in the context of the Federal Tort Claims Act. 62 F.4th at 617.

in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Section 1252(a)(5) further provides that [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal. . . ."

The First Circuit has noted that § 1252(b)(9)'s "expanse is breathtaking." *Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9-12 (1st Cir. 2007). "Congress's purpose in enacting § 1252(b)(9) is evident"; it was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals. *Id.* at 9 (citing 8 U.S.C. § 1252(a)(5)).

The named Plaintiffs and other aliens with final orders of removal that are covered by the district court's sweeping order can, and therefore must, assert a fear of return to a third country through the administrative process. 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c); *see, e.g.*, *Charles v. Garland,* 113 F.4th 20, 23 (1st Cir. 2024) (describing the sua sponte motion to reopen process under 8 C.F.R. § 1003.2(c)(2) and providing for review of denials of such motions by the BIA in limited circumstances). They can also seek an emergency stay of removal through

the well-trodden administrative process. *See generally* 8 C.F.R. §§ 1003.2(f),

1003.23(b)(v).

Finally, the Court's order violates the clear text of 8 U.S.C. §§ 1252(a)(4) and

1231(h), both of which bar review of challenges to third country removal procedures

in the district court. Section 1252(a)(4), titled "Claims under the United Nations

Convention" provides in no uncertain terms that:

> Notwithstanding any other provision of law (statutory or nonstatutory),
> including section 2241 of title 28, or any other habeas corpus provision,
> and sections 1361 and 1651 of such title, a petition for review filed with
> an appropriate court of appeals in accordance with this section *shall be
> the sole and exclusive means for judicial review of any cause or claim
> under the United Nations Convention Against Torture and Other Forms
> of Cruel, Inhuman, or Degrading Treatment or Punishment*, except as
> provided in subsection (e). (Emphasis added).[3]

Separately, 8 U.S.C. § 1231(h) provides that "Nothing in this section," which

includes statutory provisions governing withholding of removal "shall be construed

to create any substantive or procedural right or benefit that is legally enforceable by

any party against the United States or its agencies or officers or any other person."

Together, these provisions make clear that one court—the court of appeals—and

---

[3] Subsection (e) refers to 8 U.S.C. § 1252(e), which governs judicial review of expedited removal orders.

only that court, has jurisdiction over any of Plaintiffs' claims concerning what process if any they may be entitled to prior to removal.

And on top of that, the Court's order is flatly at odds with Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), which implements Article 3 of CAT and provides for judicial review of CAT claims "as part of the review of a final order of removal" exclusively. Indeed, that provision further provides that:

> Notwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252).

FARRA 2242(d). But that is precisely what the district court did—issuing its own rules governing CAT in its capacious order, in direct contravention of this provision.

Because the district court's order circumvents Congress's decision to require such claims to proceed exclusively in the courts of appeal, the district court's Order

unquestionably exceeded its authority in clear violation of §§ 1252(a)(4), (a)(5) and (b)(9) as well § 1231(h) and must be immediately stayed.

### 3. The nationwide scope of the district court's order is illegal and an abuse of discretion.

The injunction is also indefensibly overbroad because the district court issued extraordinary nationwide relief without certifying a class and without providing *any* reasoning in its written order whatsoever. Unless and until the district court complies with the requirements of Federal Rule of Civil Procedure 23(a), the district court's order must be limited solely to the named Plaintiffs. *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 481 (1978) (noting that class certification controls "the scope of the relief that may ultimately be granted"); *see also Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1 (1976) ("The District Court treated the suit as a class action, . . . but did not certify the action as a class action within the contemplation of Fed. Rules Civ. Proc. 23(c)(1) and 23(c)(3). Without such certification and identification of the class, the action is not properly a class action").[4]

---

[4] *National Center for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984) (holding that any relief ordered must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs); *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) ("Without a properly certified class, a court cannot grant relief on a class-wide basis."); *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."); *Hollon v. Mathis Independent School*

*Continued on next page.*

The district court's universal injunction flouts limitations on Article III courts arising both from the Constitution and principles in equity. Relief must be narrowly tailored to the parties before the court and must be "limited to the inadequacy that produced [plaintiffs'] injury in fact," *Gill v. Whitford*, 585 U.S. 48, 66 (2018), particularly where plaintiffs utterly fail to show that "complete relief" could not be provided by a narrower injunction limited to any bona fide, identified plaintiffs subjected to the challenged actions, *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). Such overbroad relief allows "one district court [to] make a binding judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021). The Court must therefore stay Section 2.b. of its order as to non-parties.

## D.     The Remaining Factors Support a Stay Pending Appeal

The district court's order enjoining the government, on a nationwide basis, from exercising its statutory authority to effectuate third country removals necessarily imposes irreparable harm on the Government and the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by

---

*District*, 491 F.2d 92, 93 (5th Cir. 1974) (per curiam) (injunction restraining enforcement of school regulation as to similarly situated students was an abuse of discretion and not necessary to preserve the status quo in the absence of a class certification); *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003) (the district court improperly awarded class damages when no class had been certified); In purporting to set third country removal policy for the entire nation, this Court disregarded the usual rule to limit relief to "redress only the injury shown as to [Plaintiffs]." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018).

17

representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). The district court's nationwide injunction also undermines the Executive Branch's constitutional and statutory authority over immigration and constitutes an "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013). An injunction that prevents the Executive Branch from carrying out his broad authority over immigration matters is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. Cty Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Moreover, "[t]here is always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. With a single order devoid of any legal reasoning, the Court has potentially prevented the execution of possibly thousands of pending removal orders and may have irreparably harmed the Executive's ability to negotiate the return of aliens to countries of which they are not a citizen. Accordingly, the Court's injunction imposes irreparable harm on the Government and the public interest. In contrast, a stay against section 2.b of this Court's order will not cause Plaintiffs any harm at all, since they will still be protected from removal under section 2.a.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court

stay the district court's order pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW ENSIGN
Deputy Assistant Attorney General

EREZ REUVENI
Acting Deputy Director

ELIANIS N. PEREZ
Assistant Director

MATTHEW P. SEAMON
Senior Litigation Counsel

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Senior Litigation Counsel
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 4,814 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Mary L. Larakers*
MARY L. LARAKERS

CERTIFICATE OF SERVICE

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document

filed through the ECF system will be sent electronically to the registered participants

as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent

to those indicated as non-registered participants.


/s/ *Mary L. Larakers*
Mary L. Larakers
Dated: March 29, 2025          Senior Litigation Counsel