No. 25-1311

_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

D.V.D. *et al.*,

Plaintiffs-Appellees,

v.

U.S. Department of Homeland Security *et al.*,

Defendants-Appellants.

_____

On Appeal from an Order of the United States District Court
for the District of Massachusetts

_____

**PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-
APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL
AND IMMEDIATE ADMINISTRATIVE STAY**

_____

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104

Anwen Hughes
Human Rights First
75 Broad Street, 31st Floor
New York, NY 10004

Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
Tomás Arango
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
trina@immigrationlitigation.org

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION………………………………………………..  1

II.  BACKGROUND………...............................................................  3

III. ARGUMENT………………………………………………  3

A. The Court Lacks Appellate Jurisdiction……………………………...  3

B. Plaintiffs Are Likely to Prevail on the Merits………………………..  6

   1. Section 1252(f)(1) Does Not Bar Injunctive Relief………………  7

   2. Remaining Statutes Defendants' Cite Do Not Bar Judicial Review  10

     a. Section 1252(g)…………………………………………..  10

     b. Subsections 1252(a)(5) and (b)(9)…………………………  12

     c. Subsection 1252(a)(4), FARRA § 2242(d), and Section 1231(h)…………………………………………….....................  15

   3. The TRO Appropriately Preserves the Status Quo……………….  16

C. The Remaining Factors Do Not Support a Stay Pending Appeal……  19

D. The Court Should Not Consider DHS' New Guidance ……………...  20

IV. CONCLUSION……………………………………………….........  21

# I.    INTRODUCTION

The District Court lawfully exercised its authority to issue a temporary restraining order (TRO) to prevent immediate irreparable harm to Plaintiffs and similarly situated individuals and to preserve its ability to resolve the weighty matters at issue. The Court should not consider Defendants' eleventh-hour Guidance Regarding Third Country Removals (Guidance), submitted by Rule 28(j) Letter at 10:27pm yesterday, because it was not before the District Court and Plaintiffs have not had sufficient opportunity to respond to the problems with the policy, which is inadequate on its face.

The TRO is appropriately limited until April 10, less than two weeks from the date it was issued, giving Defendants an opportunity to respond to the pending motions for class certification and preliminary injunctive relief and now allowing Plaintiffs to file their response to the Defendants' Motion for an Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (ECF 43), filed yesterday at 10:23pm, on April 4. ECF 46. Defendants instead rushed to this Court, filing their Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay (Mot.), before even responding to Plaintiffs' class certification motion and corresponding motion for preliminary injunctive relief. Defendants' appeal should be rejected as premature. However, even if the Court decides to entertain Defendants' appeal, the TRO is well supported by the record before the District

1

Court, which has not yet received briefing on the problematic Guidance.

Before the District Court, Defendants assert unfettered authority to deport noncitizens to countries that were not previously designated in immigration proceedings *without* providing any notice of *which* country, and thus without any meaningful opportunity to seek protection from persecution or torture in that unidentified country. As the District Court noted, this remarkable claim flatly contradicts representations the SGO made to the Supreme Court last Monday, expressly acknowledging Defendants' obligations under the Immigration and Nationality Act (INA) and Foreign Affairs Reform and Restructuring Act of 1998 (FARRA) that prohibit the Department of Homeland Security (DHS) from removing individuals to countries where they are likely to face persecution or torture.

Contrary to Defendants' assertions, the District Court addressed the jurisdictional statutes Defendants relied on below and correctly explained that they are inapplicable because Plaintiffs do not seek to challenge their removal orders nor Defendants' authority to remove them to a third country not previously designated in the underlying proceedings. Plaintiffs simply seek to enjoin Defendants from violating their rights to written notice and a meaningful opportunity to individually assert and apply for protection against torture (if needed).

The Court should find that review of the TRO is premature or affirm it on the merits. Plaintiffs are likely to prevail on the merits and Defendants do not satisfy the demanding standard for the extraordinary relief of obtaining a stay of preliminary injunctive relief.

## II. BACKGROUND

Plaintiffs are noncitizens with final removal orders who have been or are at risk of deportation to a country not identified in their prior removal proceedings. *See* ECF 1; ECF 1 ¶¶ 62-89; ECF 8-1, 8-2, 8-3, 8-4. Plaintiffs challenge Defendants' failure to provide written notice that they will be deported to a country never designated in removal proceedings (i.e., a third country) and an opportunity to seek withholding of removal and protection under the Convention Against Torture (CAT) regarding that third country. *See* 8 U.S.C. § 1231(b)(3)(A); FARRA (codified at Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 1208.16(c), 1208.17(a), (b)(2); 28 C.F.R. § 200.1. Plaintiffs do *not* challenge, and the TRO does not impact, the execution of any order of removal to a third country; it simply conditions execution on provision of mandatory CAT protections. ECF 40 at 2.

## III. ARGUMENT

### A. The Court Lacks Appellate Jurisdiction.

"[T]emporary restraining orders are ordinarily not appealable on an interlocutory basis." *San Francisco Real Est. Invs. v. Real Est. Inv. Tr. of Am.*, 692

F.2d 814, 816 (1st Cir. 1982). This is because "[u]nder 28 U.S.C. § 1292(a)(1), courts of appeals have jurisdiction over interlocutory appeals from orders granting 'injunctions,' but the term 'injunction' is understood not to encompass temporary restraining orders." *Id.* However, there is an exception for TROs which "lack the features of short duration and ex parte presentation." *Id*. The party asserting jurisdiction—here, Defendants—bears the burden of establishing the exception has been met. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

While the District Court heard arguments from both parties, the TRO is not appealable: the court's order is of short duration, i.e. "until the Court rules on Plaintiffs' motion for a preliminary injunction." ECF 34 at 2. The District Court ordered a hearing for April 10, 2025. ECF 33; ECF 40 nn.3 & 4. When a court arranges a "prompt hearing on a preliminary injunction[,]" this Court should not short-circuit that process and treat a TRO as a "de facto" injunction. *Office of Pers. Mgmt. v. American Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (Burger, C.J., in chambers); *see also Bessent v. Dellinger*, 145 S. Ct. 515, 515 (2025) (denying TRO review because TRO was set to expire soon and was of "very short duration"—specifically 14 days); *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 753 (2025) (denying TRO review "in light of the ongoing preliminary injunction proceedings," among other factors).

Notably, given the expedited proceedings, the District Court has not yet

received the "full adversary presentation" necessary to render the TRO an appealable order. *Massachusetts Air Pollution & Noise Abatement Comm. v. Brinegar*, 499 F.2d 125, 126 (1st Cir. 1974); *but see California v. U.S. Dep't of Educ.,* No. 25-1244, 2025 WL 878431, at *1 (1st Cir. Mar. 21, 2025) (reviewing TRO where "the district court orally heard the Department on at least some of the central issues prior to issuing the TRO"). Neither Plaintiffs nor the District Court has had an opportunity to address the problems with the new Guidance, *see infra* § III.D, nor Plaintiffs' class certification motion. The District Court has provided an expedited schedule to address class certification, which is a critical component of the claims and relief requested. ECF 33.

Defendants make much of the President's need to carry out his duties and note that the President's "defense against judicial encroachments is to appeal." Mot. at 6. They ignore that they will have that opportunity two weeks from now should the District Court grant a preliminary injunction. ECF 33. And while Defendants claim that an order requiring them to honor the law (and their own representations to the Supreme Court) inflicts irreparable harm, Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice . . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *cf. Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (recognizing "the public interest in having the immigration laws applied correctly").

Finally, Defendants misconstrue what is at stake here by claiming an "immediate and irreparable impact on the President's ability to negotiate the removal of aliens to third countries." Mot. at 6. The TRO only requires that Defendants provide procedural protections—which federal law plainly requires—*prior* to removal. The executive can execute third country removals if they afford written notice and an opportunity to apply for CAT protection on an individualized basis. And even if foreign affairs were implicated, the "executive is not free from the ordinary controls and checks of Congress merely because foreign affairs are at issue." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015).[1]

## B.    Plaintiffs Are Likely to Prevail on the Merits

Courts apply the traditional four factor test in considering stays pending appeal. *See Hilton v. Braunskill*, 481 U.S. 770, 770-71 (1987). In the context of the appeal of a TRO, this standard is "daunting[,] . . . making any claim of likelihood of success vanishingly low." *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *19 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring).

Defendants' motion does not attempt to defend their position on the merits or to counter the District Court's finding that "Plaintiffs have established that they are likely to succeed." ECF 40 at 4. Plaintiffs are likely to succeed on their claims

---

[1]    Defendants' request to alternatively consider the appeal as a mandamus "to protect . . . the President's prerogative over matters of foreign affairs against intrusion by the Judicial Branch" fails for these same reasons. Mot. at 8.

that the INA, FARRA, Due Process, and the implementing regulations require written notice of a third country deportation and a meaningful opportunity to be heard on a claim that they will be subject to persecution, torture, or death if deported there. *See* ECF 40; ECF 1; ECF 7, ECF 44.

### 1. Section 1252(f) Does Not Bar the Injunctive Relief

Defendants wrongly contend that § 1252(f)(1) bars the TRO.[2] The TRO does not enjoin 8 U.S.C. §§ 1231(b)(1) and (b)(2); it did not enjoin DHS from deporting individuals to third countries as authorized by these statutes. Instead, it requires that such individuals first be afforded the protections mandated by FARRA and due process, i.e., written notice and a meaningful opportunity to make a fear-based claim for CAT protection.

The TRO also ensures individualized access to CAT protections, which do not fall under § 1252(f)(1) because CAT protections are not in "chapter 4 of title II [of the INA]*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [IIRIRA]," which are the only provisions covered by the plain language of § 1252(f)(1).[3] ECF 40 at 8. Rather, § 1252(f)(1) only bars

---

[2]    There is no dispute that § 1252(f)(1) does not bar injunctive relief to the named Plaintiffs, nor do Defendants contend otherwise. *Brito v. Garland*, 22 F.4th 240, 247 (2021) (stating that "[t]his text [of § 1252(f)(1)] plainly leaves untouched a court's jurisdiction to issue injunctive relief in favor of any "individual [noncitizen] against whom [proceedings] have been initiated.").

[3]    The codified text of § 1252(f)(1) is identical to the enacted language except

injunctive relief with respect to the provisions covered by the plain language of the statute that enacted it, i.e., IIRIRA § 306(a)(2) at the time of IIRIRA took effect on September 30, 1996. Here, FARRA was enacted in October 1998, two years after IIRIRA's effective date, and did not directly amend the INA but instead was codified at Note to 8 U.S.C. § 1231. Thus, neither FARRA nor the implementing regulations are within § 1252(f)(1)'s scope.

The Ninth Circuit's decision in *Galvez v. Jaddou* is instructive. There, plaintiffs raised a class action challenge to delayed adjudication of special immigrant juvenile petitions, the authority for which was enacted by the Trafficking Victims Protection Reauthorization Act (TVPRA) and codified at 8 U.S.C. § 1232(d)(2). 52 F.4th at 826. Because the TVPRA was enacted in 2008, 12 years after IIRIRA's effective date, the court upheld the lower court's exercise of jurisdiction. 52 F.4th at 829-31.

Nor is § 1252(f)(1) applicable simply because Plaintiffs' challenge to the

---

for the language which refers to "…. the provisions of part IV of this subchapter, as amended by the [IIRIRA] ……" The reference to "part IV of this subchapter" in codified § 1252(f)(1) refers to Part IV of Subchapter II of Chapter 12 of Title 8 of the U.S. Code. However, the text of IIRIRA § 306(a)(2), which enacted § 1252(f), differs from the codified text, likely due to human error in the codification process. As the Ninth Circuit held in *Galvez v. Jadou*, 52 F.4th 821 (9th Cir. 2022), courts should rely on IIRIRA § 306(a)(2). The provisions covered by IIRIRA § 306(a)(2) is include 8 U.S.C. §§ 1221, 1222, 1223, 1224, 1225, 1225a, 1226, 1227, 1228, 1229, 1229a, 1229b, 1229c,1230, 1231, 1252, 1253, and 1254a. It does not include later enacted provisions or provisions that are not part of the INA, such as §§ 1226a, 1252c, and 1232.

non-referenced provision, FARRA, may potentially have a collateral impact on a covered provision, i.e., § 1231. Because Plaintiffs' claims regarding CAT protections do not arise from the INA but rather from FARRA and the regulations, any impact on § 1231 is collateral. *See Gonzalez v. ICE*, 975 F.3d 788 at 812-15, 814-815 (9th Cir. 2020) (affirming injunction prohibiting issuance of certain immigration detainers, finding that any effect on provisions covered by § 1252(f)(1) was collateral).

Likewise, in *Al Otro Lado v. Exec. Office for Immig. Review*, the court upheld the district court's "negative injunctive relief" in a class action. 120 F.4th 606, 628-29 (9th Cir. 2024). The injunction prohibited DHS from applying a rule barring asylum eligibility under 8 U.S.C. § 1158, reasoning that "[e]ven though asylum eligibility may change the outcome of a removal proceeding under a covered provision [of § 1252(f)(1)], such an effect is collateral under our precedents" which "[t]he Supreme Court acknowledged . . . in [*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)] and left it undisturbed." *Id*. at 628.

Similarly, here, the Court should affirm the District Court's jurisdiction to enter an injunction mandating procedural protections under FARRA prior to executing removal to a third country.

## 2. Remaining Statutes Defendants' Cite Do Not Bar Judicial Review.

### a. Section 1252(g)

Section 1252(g) governs jurisdiction over actions "arising from" decisions or actions "to commence removal proceedings, adjudicate cases, or execute removal orders." The District Court correctly concluded that this section is not applicable because Plaintiffs do not challenge the execution of a removal order. ECF 40 at 2-3; ECF 44 at 5. Rather, Plaintiffs challenge DHS' actions depriving them of their statutory rights to notice and an opportunity to apply for protection from persecution or torture prior to deportation to a third country. ECF 1-6, 37-52, 102-05, 110, 113-17, 120.

Critically, these protections are mandatory, as required by the INA, Due Process Clause, FARRA, and its implementing regulations. Both the Supreme Court and this Court have held that § 1252(g) does not bar challenges to nondiscretionary decisions or actions. *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482, 485, 487 (1999) (holding that § 1252(g) is "narrow[]," "applies only to three discrete actions," was "clearly designed to give some measure of protection to . . . discretionary determinations," and calling it a "discretion-protecting provision."); *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) ("Kong's FTCA claim does not arise from the discretionary decision to execute removal but instead arises from the government's alleged violations of law

in arresting Kong without a relevant warrant and in failing to abide by its own regulations."); *Guerra-Casteneda v. U.S.*, 656 F. Supp. 3d 356, 362-63 (D. Mass. 2023) (finding § 1252(g) did not apply because plaintiff's claims arose from the violation of a stay order, not from the execution of the removal order). In *Kong*, the Court held that § 1252(g) did not apply to the plaintiff's damages claim under the Federal Tort Claims Act (FTCA) predicated on his post-final-order arrest and re-detention, recognizing that "§ 1252(g) was passed with the understanding that challenges to the legality of a petitioner's detention" were collateral to DHS' decision to execute his removal order and were not covered by the statute. *Kong*, 62 F.4th at 615. Likewise, here, Plaintiffs' claims are separate from DHS' discretionary authority regarding the execution a removal order.[4]

The out-of-circuit cases on which Defendants rely are inapposite. Each involved an attempt to limit DHS' authority to execute a removal order to the designated country of removal because of some *discretionary* agency action that had not yet taken place, not because of any mandatory obligation the agency failed to fulfill. Mot. at 12. In *Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022), *Tazu v. Att'y Gen.*, 975 F.3d 292, 297, 300 (3d Cir. 2020), and *Hamama v. Adducci*,

---

[4]     Defendants err in their effort to cabin *Kong* to the detention and/or FTCA context. This Court expressly rejected that distinction, finding that "the text of § 1252(g) cannot be interpreted differently depending on [the nature of the claim]." *Kong*, 62 F.4th at 617 (citing *Clark v. Martinez*, 543 U.S. 371, 382 (2005)).

912 F.3d 869, 874-77 (6th Cir. 2018), petitioners sought to stay execution of their removal orders to await adjudication of discretionary motions to reopen removal proceedings. *Accord Kong*, 62 F.4th at 618 (distinguishing *Tazu*). In *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021) and *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021), petitioners sought stays to await adjudication of other discretionary applications. Furthermore, *Silva v. United States* was wrongly decided. 866 F.3d 938, 941 (8th Cir. 2017). It conflicts with *AADC* and *Kong* because the court rejected that § 1252(g) is limited to discretionary decisions and pre-dates the Supreme Court's reaffirmance of *AADC*'s "narrow construction of § 1252(g)." *Kong*, 62 F.4th at 613.

### b. Subsections 1252(a)(5) and (b)(9)

Defendants' reliance on Subsections 1252(a)(5) and (b)(9), which channel judicial review via a petition for review to the courts of appeals, rests on the erroneous premise that Plaintiffs can somehow bring their claims that DHS failed to provide *post-final order* procedural protections through a petition for review. But as the District Court found, ECF 40 at 2-3, Plaintiffs are not challenging the removal order or any underlying components. Instead, they are seeking to challenge a post-proceeding action taken by DHS that is not based on the prior order. Indeed, because the alleged violations occur after the removal proceeding are completed, Plaintiffs have no other avenue to seek judicial review.

Defendants' position contravenes Supreme Court and First Circuit precedent. In *Jennings v. Rodriguez*, the Supreme Court rejected an "expansive interpretation" of § 1252(b)(9) such as Defendants claim here, finding that it "would lead to staggering results." 583 U.S. 281, 293 (2018). At issue in *Jennings* was the legality of immigration detention, including the meaning of the term "arising from" as used in 8 U.S.C. § 1252(b)(9). Noting the same term in § 1252(g), the Supreme Court reiterated that it does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General" but instead, "just those three specific actions themselves." *Jennings*, 538 U.S. at 294. The Court described a variety of hypothetical tort claims that a detained noncitizen might bring and noted that "[t]he 'questions of law and fact' in all those cases could be said to 'aris[e] from' actions taken to remove the [noncitizens] in the sense that the [noncitizens'] injuries would never have occurred if they had not been placed in detention." *Id.* (quoting 8 U.S.C. § 1252(b)(9)). The Court noted that it "would be *absurd*" to construe § 1252(b)(9) so broadly. *Id.* (emphasis added).

This is consistent with this Court's prior holding that § 1252(a)(5) and (b)(9) do not channel all claims related to removal proceedings to a petition for review. As this Court made clear in *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007), "section 1252(b)(9) is a judicial channeling provision, not a claim-barring one." This Court

explained that "[w]e thus read the words 'arising from' in section 1252(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process. Among others, claims that cannot effectively be handled through the available administrative process fall within that purview." *Id.; see also Kong*, 62 F.4th at 613-14 (discussing *Aguilar*, 510 F.3d at 7-8, 11).

There are also practical barriers to petitions for review. For example, a petition must be filed within 30 days of the final order, 8 U.S.C. § 1252(b)(1), while many final orders are years or decades old before DHS moves to deport someone to a third country. ECF Nos. 8-1 ¶6, 8-2 ¶4, 8-3 ¶9. Moreover, a petition for review is limited to the administrative record *in the prior proceeding*. 8 U.S.C. § 1252(b)(4)(A).

The irony in Defendants' reliance on Subsections (a)(5) & (b)(9) is that Defendants' actions have blocked any possible path of obtaining judicial review through a petition for review. Defendants claim that Plaintiffs simply can file a motion to reopen if they fear persecution or torture, and that Plaintiffs can then file a petition for review if that motion is denied. Defendants' explanation contains fatal flaws, including its most obvious deficiency as recognized by the District Court: if an individual is not given written notice of their imminent removal to a third country, they have no opportunity to submit a written motion or application for protection related to their removal to that country. ECF 40 at 6-7 & n.2. A

motion to reopen is also not a viable vehicle for numerous other reasons. *See* ECF

1 at ¶¶ 41 & n.3, 42, 44, 45, 51; ECF 7 at 13 n.5.

### c. Subsections 1252(a)(4), FARRA § 2242(d), and Section 1231(h)

Similarly, neither 8 U.S.C. § 1252(a)(4) nor § 2242(d) of FARRA bar

review. Like § 1252(a)(5) and (b)(9), these provisions channel review of CAT

claims to the court of appeals in petitions for review. *See, e.g.*, *Nasrallah v. Barr*,

590 U.S. 573, 582 (2020). But, as discussed *supra*, Plaintiffs claims do not fall

within the scope of § 1252(a)(4) or the FARRA limitation because they have arisen

*after* the conclusion of proceedings and precisely because they are being prevented

from even submitting an individualized application for CAT protection. *Cf.*

*Compere v. Nielsen*, 358 F. Supp. 3d 170, 177 n.8 (D.N.H. 2019) (finding §

1252(a)(4) "plainly inapplicable" where the petitioner was not seeking review of

the denial of CAT claim); *O.H.C. v. DHS,* 950 F.3d 177, 186 (3d Cir. 2020)

(finding § 1252(a)(4) does not bar review "[w]hen a detained [noncitizen] seeks

relief that a court of appeals cannot meaningfully provide on petition for review of

a final order of removal").

FARRA § 2242(d)'s bar to review of CAT regulations is also inapposite as

the TRO does not rewrite or in any way challenge the CAT regulations. [5] Instead,

---

[5]     It is also irrelevant that CAT "is not self-executing," *id*., because it "has

Plaintiffs claim that Defendants' policy is contrary to those regulations. ECF 1 ¶¶ 105, 110, 113, 115, 120; *see also Saint Fort*, 329 F.3d at 201 (finding FARRA § 2242(d) not implicated where "no challenge is made . . . to the FARRA regulations"); *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 216 (3d Cir. 2003) (same).

Finally, 8 U.S.C. § 1231(h) is irrelevant where Defendants challenge the court's order with regard to CAT protection, not withholding. *See, e.g.*, *Garcia v. Johnson*, No. 14-cv-01775-YGR, 2014 WL 6657591, at *5 n.3 (N.D. Cal. Nov. 21, 2014). Second, Defendants' argument is foreclosed by *Zadvydas v. Davis*, where the Supreme Court held that § 1231(h) merely establishes that § 1231 itself does not create a cause of action; it does not render § 1231 unenforceable where another statute permits a challenge to actions that are "without statutory authority." 533 U.S. 678, 688 (2001). *See Texas v. United States*, 515 F. Supp. 3d 627, 634 (S.D. Tex. 2021) (holding that "§ 1231(h) does not preclude Texas from challenging § 1231(a)(1)(A) under 5 U.S.C. § 706").

### 3.     The TRO Appropriately Preserves the Status Quo.

In the normal course, this Court reviews "the scope of an injunction for abuse of discretion." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000); *see also DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 423 (1st

---

been implemented in the United States through FARRA and the subsequent regulations." *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003); *see also Nasrallah*, 590 U.S. at 580.

Cir. 2024). Defendants can make no such showing as the nationwide scope here of the TRO merely preserves the status quo and the District Court's jurisdiction to protect against irremediable harm. ECF 40.

Plaintiffs have alleged and documented a nationwide policy whereby Defendants fail to provide notice prior to removal to a third country or an opportunity to apply for CAT protections, *see* ECF 1-4, 8-8—8-24. Defendants confirmed they do not believe they are obligated to provide either notice or an opportunity to apply for CAT protection. ECF 40 at 4, 6. Without a nationwide injunction, "the threatened harm [Plaintiffs and putative class members face] is clear and simple: persecution, torture, and even death." ECF 40 at 6. Again, the TRO does not prevent detention, re-detention, the execution of removal orders to designated countries, or even removal to third countries if CAT protections are honored. ECF 40 at 8. The TRO was thus carefully circumscribed to "preserve the status quo before the merits have been resolved," *Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 19 (1st Cir. 2009), "freez[ing] the existing situation so as to permit [the court], upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 620 (1st Cir. 1995).

Defendants nonetheless criticize the District Court for issuing the nationwide injunction without first certifying a class, Mot. at 16, but the District Court

explained that issuing an injunction which temporarily protects all similarly situated individuals will allow the court to "consider class certification in conjunction with the motion for preliminary injunction," ECF 40 at 2 n.4. Indeed, this Court has held that class certification is not necessary where "injunctive or declaratory relief will inure to the benefit of all those similarly situated." ECF 40 at 2 n.4 (citing *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985)). That approach makes particular sense here. Had the lower court provisionally certified the class, Defendants would simply have asserted that the lower court "improperly used [provisional] class certification to effectively impose a backdoor nationwide injunction." App. to Vacate Order at 4, No. 24A, *Trump v. J.G.G.* (S. Ct. Mar. 28, 2025). Indeed, in *J.G.G.*, many of the same Defendants are now telling the Supreme Court that, pursuant to Rule 23, "courts must follow rigorous procedures and establish that an ascertainable class shares common issues capable of mass resolution." *Id.* Here, that is exactly what the District Court has done by setting up an expedited briefing schedule to consider class certification and the preliminary injunction, while also acting to ensure that putative class members suffer irreparable harm in the meantime. ECF 40 at 2 n.4. Further, "a federal court may issue an injunction as a means to preserve its jurisdiction." *Vicor Corp. v. FII USA Inc.*, No. 24-1620, - F.4th -, 2025 WL 719069, at *6 (1st Cir. Mar. 6, 2025) (citation omitted); *see also F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966)

("[D]ecisions of this Court have recognized a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." (internal quotation marks omitted)). In addition, provisional class certification is not necessary when issuing an injunction as to a governmental defendant. *Westenfelder v. Ferguson*, 998 F. Supp. 146, 159 (D.R.I. 1998).

## C.     The Remaining Factors Do Not Support a Stay Pending Appeal.

Defendants do not face irreparable harm absent a stay. Instead, public interest and the balance of equities tips sharply in Plaintiffs' favor. The TRO does not stop Defendants from executing removal orders even to third countries—so long as they provide individuals with notice and a meaningful opportunity to apply for CAT protection. ECF 34 at 2. It only prevents Defendants from unlawfully failing to provide notice of third country deportations and an opportunity to seek CAT protection; Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice . . . ." *Rodriguez*, 715 F.3d at 1145.

Instead, absent the TRO, by Defendants' own admission, DHS may immediately deport people to countries where they face immediate torture or death with no individualized notice or opportunity to seek protection. As the District Court explained:

> [T]he government was asked if it took the position that it can 'decide right now that someone who is in [] custody is getting deported to a third country,

give them no notice and no opportunity to say, 'I will be killed the moment I arrive there,' and, as long as the [government] doesn't already know that there's someone standing there waiting to shoot him, that's [] fine." Rough Transcript at 26:13-21 ('In short, yes.').

ECF 40 at 4 (alterations in original); ECF 44 at 28-29. Plaintiffs also produced extensive evidence that, absent the TRO, many individuals face deportation to third countries where they fear—or have already experienced—serious harm and/or chain deportation back to countries where they have a recognized fear of persecution or torture. *See* ECF 7 at 14-16; ECF 8-1—8-3, 8-8—8-24. This is plainly not in the public interest. *See, e.g.*, *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011); *Tesfamichael*, 411 F.3d at 178.

**D.    The Court Should Not Consider DHS' New Guidance.**

This Court should not consider Defendants' last-minute filing, *see* Mar. 30 28(j) Letter, or the attached Guidance. *See* Fed. R. App. P. 12.1 (court will consider remand after indicative ruling motion only "if the district court states either that it would grant the motion or that the motion raises a substantial issue"); *see also Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir. 1993) ("[A] litigant's failure to explicitly raise an issue before the district court forecloses that party from raising the issue for the first time on appeal.").[6] Plaintiffs will contest the Guidance before the District Court as ordered. ECF 46.

---

[6]    Taking judicial notice at this late date would severely prejudice Plaintiffs.

Even if it is considered,[7] it is wholly inadequate and in no way obviates

Plaintiffs' need for a TRO. Defendants' receipt of blanket diplomatic assurances

alone is insufficient protection. *See, e.g.*, *Khouzam v. Att'y Gen. of U.S.*, 549 F.3d

235, 259 (3d Cir. 2008) (holding that, to satisfy due process in the reliance on

diplomatic assurances, an individual must receive, inter alia, "an individualized

determination" and "an opportunity to present [a challenge], before a neutral and

impartial decisionmaker"). The Guidance does not satisfy this standard, relying on

blanket diplomatic assurances to cover all possible individuals who may be

removed, without regard to individual claims. It does not protect against chain

*refoulement* or torture by the receiving country to the country of origin, nor does it

protect against persecution or torture by non-governmental actors. Moreover,

noncitizens will have no idea that they need to affirmatively state a fear to avoid

removal, when and to whom they must do so, what words or actions officers will

require to do so, or the ability to speak a language that officers understand.

## IV.    CONCLUSION

The Court should not review the TRO. If it does, the Court should affirm the

---

*Cf. Town of Sanford v. United States*, 140 F.3d 20, 22 (1st Cir. 1998) (taking judicial notice where policy changed in *favor* of plaintiff).

[7]    If considered, Plaintiffs request additional time to respond to the Guidance. Contrary to Defendants' claim, this is not a "clarification" of existing procedure. *See* ECF 1 ¶50 (explaining Defendants' prior assertions that they have no policy regarding notice of third country deportation).

TRO and permit the District Court, in the first instance, to address Plaintiffs'

pending motions for a preliminary injunction and class certification and

Defendants' motion for an indicative ruling.

Respectfully submitted,


s/ Trina Realmuto

Tomas Arango
Kristin Macleod-Ball
Mary Kenney
Tomás Arango*
NATIONAL IMMIGRATION
    LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Anwen Hughes*
HUMAN RIGHTS FIRST
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
NORTHWEST IMMIGRANT
    RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs-Appellants*

*\* Applications for admission forthcoming*

Dated: March 31, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because it contains 5,199 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f). This brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

*s/ Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance

## CERTIFICATE OF SERVICE

I, Trina Realmuto, hereby certify that on March 31, 2024, I caused this document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the Court's appellate CM/ECF system. Defendants-Appellants' counsel are registered CM/ECF users and will be served via the Notice of Docket Activity through this Court's CM/ECF system.

*s/ Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance