No. 25-1311

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

―――――――――――――

D.V.D., *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security, *et al.*,

*Defendants-Appellants*.

―――――――――――――

On Appeal from the United States District Court
for the District of Massachusetts

―――――――――――――

# DEFENDANTS'-APPELLANTS' REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

―――――――――――――

| | |
|---|---|
| YAAKOV M. ROTH<br>*Acting Assistant Attorney General* | MATTHEW P. SEAMON<br>NICOLE P. GRANT<br>MARY L. LARAKERS<br>*Senior Litigation Counsel*<br>U.S. Department of Justice,<br>Civil Division<br>Office of Immigration<br>Litigation<br>P.O. Box 868,<br>Ben Franklin Station<br>Washington, DC 20044 |
| DREW ENSIGN<br>*Deputy Assistant Attorney General* | |
| EREZ REUVENI<br>*Acting Deputy Director* | |
| ELIANIS N. PEREZ<br>*Assistant Director* | |

# INTRODUCTION

The district court's universal injunction is immediately appealable under 28 U.S.C. §1292(a)(1) because it goes beyond preservation of the status quo and instead mandates affirmative relief that is squarely and incontestably barred by 8 U.S.C. §1252(f), as confirmed by *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022). In addition, §1252(a)(5), (b)(9), and §1252(g) all independently bar this suit and the Temporary Restraining Order ("TRO") that was entered, as does FARRA itself. Finally, the universal scope of the injunction—for which no rationale was given—is a manifest abuse of discretion. This Court should therefore grant Defendants' request for a stay pending appeal, at minimum as to non-plaintiffs.

### A. This Court Has Jurisdiction

The district court's order is immediately appealable under 28 U.S.C. §1292(a)(1).. An order labeled as a TRO is nonetheless immediately appealable as an injunction when it disturbs the status quo. *See Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 473 U.S. 1301, 1304–05 (1985) (noting that appellate jurisdiction would have been available where a TRO has "disturbed the status quo"); *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160–61 (3d Cir. 2020). Additionally, an order labeled as a TRO is immediately appealable if it "requires a government official to affirmatively engage in unprecedented mandatory action with potent and

2

irretrievable" diplomatic impact. *Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978). Both conditions are true here.

First, the district court's order goes well beyond preserving the status quo, imposing affirmative procedural requirements on DHS and implementing nationwide limitations on the agency's ability to carry out removals in the normal course. As the district court noted, issuing an order that "alters rather than preserves the status quo ... is subject to an even more heightened level of legal and factual scrutiny." ECF No. 40 (citation and quotation marks omitted)). Indeed, the district court's order was broader than the relief even sought by plaintiffs because it applies to all aliens with final orders of removal—not just members of the putative class, Order Granting TRO, at 2.

Second, the order's practical effect is profound. It works an extraordinary harm because it prohibits Defendants from removing *any* alien with a final order of removal to a third country unless and until it complies with additional procedures that no statute requires. *Id.* Thus, the order violates the separation of powers and undermines the President's authority to remove aliens. It is precisely the sort of "serious, perhaps irreparable consequences that [the government] can effectually challenge only by an immediate appeal." *Carson*, 450 U.S. at 90 (quotations omitted). The district court has usurped core executive powers and imposed tremendous practical effects on the President's authority to manage foreign affairs,

including with allies who may wish to accept aliens who are not citizens. That confirms that the order is appealable. *See Adams,* 570 F.2d at 953 (treating a TRO as an appealable injunction because, instead of "preserv[ing] the status quo pending further proceedings," it "commanded an unprecedented action irreversibly altering [a] delicate diplomatic balance").

Plaintiffs argue that this Court lacks jurisdiction because "the court's order is of short duration" and the district court has set a "prompt hearing on a preliminary injunction." *See* Plaintiffs' Opposition to Defendants' Emergency Motion to Stay, at 7. But the Supreme Court has held that an order is properly regarded as an appealable injunction if it has "'serious, perhaps irreparable consequences' that [a party] can 'effectually challenge' only by an immediate appeal." *Carson v. American Brands, Inc.*, 450 U.S. 79, 90 (1981). Thus, a order labeled as a TRO may be appealable when it "deeply intrude[s] into the core concerns of the executive branch." *Office of Pers. Mgmt.*, 473 U.S. at 1305 (citation omitted). This one manifestly does.

### B. <u>Section 1252(f)(1) Bars the District Court's Injunction.</u>

As explained by the Supreme Court, "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Those statutory

provisions specifically include "implementation and enforcement of the immigration laws governing … *removal of aliens*." *Id.* at 549-50 (emphasis added).

Section 1252(f)(1) thus plainly bars the district court's injunction. Its order compels "federal officials to take or refrain from taking actions" before "carr]ying] out" "removals of aliens" under section 1231. *Id.* Indeed, even in Plaintiffs' own characterization, the order effects an "injunction mandating [affording of] procedural protections under FARRA *prior to executing removal to a third country*." Opp. at 9 (emphasis added). Such injunctions barring execution of removal orders unless additional conditions are satisfied are *precisely* what § 1252(f)(1) prohibits, as confirmed by the Supreme Court confirmed in *Aleman Gonzalez*. In response, Plaintiffs argue (at 7-9) that 1252(f) does not apply because their claims are based on "FARRA and due process," which they contend is collateral to section 1231. But the Supreme Court in *Aleman Gonzalez* specifically agreed with the Government's position that "the 'operation of the provisions' [in § 1252(f)(1)] is a reference 'not just to the statute itself *but to the way that it is being carried out."* 596 U.S. at 550 (emphasis added) (alteration omitted). Plaintiffs' objections based on FARRA and due process are precisely such objections to how removal operations are being "carried out" and are equally barred by § 1252(f)(1). Indeed, it is well-established that a "party may not expand a court's jurisdiction by creative pleading." *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006); *see also*

5

*Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951). As *Aleman Gonzalez* makes clear, it is the effect on the government's *operation* of the covered provisions that matters, not the plaintiffs' framing of their claim. 596 U.S. at 552-54.

Because §1252(f) and *Aleman Gonzalez* squarely preclude injunctions regarding non-parties against operations of removal operations, the district court's order is impermissible, and Defendants are likely to prevail on their appeal

C. **Plaintiffs' Claims are Barred by Section 1252(g)**

Plaintiffs' claims, which seek to prohibit U.S. Immigration and Customs Enforcement ("ICE") from executing, valid final orders of removal, are manifestly barred by §1252(g), which eliminates district court jurisdiction over claims arising from the government's actions to execute removal orders.

Plaintiffs' argument to the contrary relies on a discretionary versus non-discretionary dichotomy that contradicts the statute's plain language. Section 1252(g) bars "any cause or claim ... arising from the decision or action by the Attorney General to ... execute removal orders." The statute, by its terms, applies to *any* claim and does not include the limit that Plaintiffs propose. Indeed, courts of appeals across the country have repeatedly rejected Plaintiffs'' proposed dichotomy because it contradicts the statute's plain language. *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021); ("[T]hat statute does not offer any discretion-versus-authority distinction of the sort

they claim."); *E.F.L. v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021); *Foster v. Townsley,* 243 F.3d 210, 214 (2001); *Tsering v. U.S. Immigration & Customs Enforcement,* 403 Fed. Appx. 339, 342-43 (10th Cir. 2010).

Plaintiffs' reliance on *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*)*,* 525 U.S. 471 (1999), is misplaced. "Although the [Supreme] Court [in *AADC*] emphasized the importance of preserving the Attorney General's discretionary functions in the three enumerated categories, it did not explicitly state that the provision applies *only* to review of discretionary decisions ...." *Townsley,* 243 F.3d at 214 (). Rather, the Court merely made the obvious point that §1252(g) applies to the government's discretionary decisions regarding the three actions listed in the statute, and it did so because the selective enforcement claim they were examining involved such a discretionary decision. The Court said *nothing* about purported legal challenges to the actions listed in §1252(g), and certainly did not give district courts carte blanche to review those challenges. Courts of appeals analyzing Plaintiffs' instant argument have rejected reliance on *AADC* for this purpose.

Plaintiffs' reliance on *Kong v. United States,* 62 F.4th 608 (1st Cir. 2023), is equally misplaced. There, the alien plaintiff brought a suit under the Federal Tort Claims Act claiming damages related to his allegedly unlawful detention. *Kong,* 62 F.4th at 617-18. Analyzing §1252(g)'s "arising from" language, this Court held §1252(g) did not bar Kong's claim raising legal challenges to his *detention* because

his arrest and detention were collateral to his removal and he did not "challenge the decision to try and execute his removal." *Id.* The Court did not, as Plaintiffs suggest, recognize a carve out in §1252(g) for legal challenges like Plaintiffs' that seek to prohibit their removal. *Id.*

By its plain terms, §1252(g) bars Plaintiffs' claims.

### D. **Section 1252(a)(5) and (b)(9) Also Bar Plaintiffs' Claims**

Section 1252(a)(5) and (b)(9) also bar Plaintiffs' claims. Plaintiffs make much of language interpreting §1252(b)(9) narrowly in the Supreme Court's decision on immigration detention in *Jennings v. Rodriguez,* 583 U.S. 281, 293 (2018). But Plaintiffs fail to grapple with the real paths to administrative relief available to them—even in the absence of the district court's illegal injunction and ICE's recent guidance—which form the foundation for the district court's lack of jurisdiction under §1252(b)(9). This Court's decision in *Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007), clarified that §1252(b)(9) bars claims that can be "raised efficaciously within the administrative proceedings delineated in the INA." *Id.* at 11.

Now that DHS has issued Guidance, Plaintiffs' claims are plainly foreclosed by §1252(b)(9) because the Guidance provides a process under which Plaintiffs can assert a claim to DHS and have that claim reviewed by United States Citizenship and Immigration Services, and if successful, through a joint motion to reopen.

8

Separate from this Guidance, to the extent Plaintiffs have a fear of return to a third country, they can assert that fear at any time to DHS or, as appropriate, to the immigration court or the Board of Immigration Appeals via a motion to reopen. While the type of motion to reopen available differs from alien to alien, any alien can seek to reopen their proceedings to assert a new fear through the *sua sponte* motion to reopen process which does not carry the 30-day time limitation mentioned by Plaintiffs. *See, e.g.*, *Charles v. Garland,* 113 F.4th 20, 23 (1st Cir. 2024) (describing the sua sponte motion to reopen process under 8 C.F.R. §1003.2(c)(2) and providing for review of denials of such motions in limited circumstances).

Plaintiffs focus on the lack of notice regarding the country of removal as if their fear depends on receiving that notice. It does not. Plaintiffs know the countries to which they have a fear of return, and they can assert those fears to DHS or move to reopen their proceedings at any time, including once they are advised about the country of removal pursuant to the Guidance or otherwise. To the extent Plaintiffs claim that due process requires notice of removal to the third country, they can also make that claim through the administrative process. Plaintiffs know that this process is available but would rather seek relief in the district court because it is more convenient.[1] This is precisely the scenario Congress intended to preclude with

---

[1] In fact, the National Immigration Litigation Alliance, to whom several of Plaintiffs' counsel belong, issued a practice advisory regarding the motion to reopen process for aliens like Plaintiffs including template motions to reopen and letters to DHS to assert fear of return to third countries.

9

§1252(b)(9). This Court should give effect to Congress' plain intent and stay the district court's illegal injunction because §1252(b)(9) bars Plaintiffs' claims.

E. **FARRA also Precludes the Injunction**

The district court's order forces Defendants to implement the CAT via additional and different procedures beyond those adopted in DHS's implementing regulations. Even apart from the arguments pressed above, the court had no jurisdiction to award this relief.

The CAT is not self-executing. *See Medellin v. Texas*, 552 U.S. 491, 505 (2008). Rather, it is only operative domestically insofar as Congress implements it. Congress, in its discretion, implemented it by directing the issuance of regulations, expressly depriving courts of jurisdiction to review those regulations, and channeling all review of individual CAT claims into review of final orders of removal. FARRA § 2242(d); Mot. at 15-16; *see also* 8 U.S.C. § 1252(a)(4) (explaining that "a petition for review" is the "sole and exclusive means for judicial review of any cause or claim under the [CAT]").

Plaintiffs offer no retort to this clear jurisdictional command other than to assert, inexplicably, that the district court's order actually "does not rewrite or in any

---

*See* National Immigration Litigation Alliance, New Advisory: Protecting Noncitizens Granted Withholding of Removal or CAT Protection Against Deportation to Third Countries Where They Fear Persecution/Torture, available at https://immigrationlitigation.org/new-advisoryprotecting-noncitizens-granted-withholding-of-removal-or-cat-protection-against-deportation-to-third-countries-where-they-fear-persecution-torture/, (January 30, 2025).

way challenge the CAT regulations." Opp. at 17. But that is simply untrue. The district court has prevented DHS from exercising its statutory removal authority unless and until it implements the CAT in a different way and provides specific additional procedures beyond those provided by the current regulations (*i.e.*, "written notice" of the third country to where the alien may be removed and a "meaningful opportunity" to lodge a CAT claim). ECF No. 34. Because FARRA § 2242(d) and 8 U.S.C. § 1252(a)(4) together make clear that the district court is without authority to force DHS to implement any particular CAT procedures beyond what is in DHS's regulations, section 2.b of the order should immediately be stayed.

F. **This Court Can Consider DHS's New Guidance**

Lastly, this Court should consider DHS's new guidance to grant Defendant's Emergency Stay Motion. Plaintiffs argue that the Court shouldn't consider the Guidance because it "prejudices" Plaintiffs and because the Guidance was not presented to the district court when it entered the TRO. But that argument fails because Rule 28(j) provides that "[i]f pertinent and significant authorities come to a party's attention ... after oral argument but before decision ... [the] party may promptly advise the circuit clerk by letter[.]" Fed. R. App. P. 28(j). *See Watchtower Bible & Tract Soc'y of New York, Inc. v. Municipality of San Juan*, 773 F.3d 1, 14 (1st Cir. 2014) (relying on representation at "both at oral argument and in a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j)); *see also Aamer v.*

*Obama*, 742 F.3d 1023, 1039 (D.C. Cir. 2014); *Armato v. Grounds*, 766 F.3d 713, 718 n.2 (7th Cir. 2014).

Plaintiffs also contend (at 21) that the assurances offered by Defendants are "wholly inadequate" to protect their CAT rights. But Plaintiffs' complaints are squarely barred by controlling authority. *See*, *e.g.*, *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) ("Under [the Supreme Court's decision in] *Munaf,* however, the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee.").

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion for Emergency Stay Pending Appeal.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW ENSIGN
Deputy Assistant Attorney General

EREZ REUVENI
Acting Deputy Director

ELIANIS N. PEREZ
Assistant Director

NICOLE GRANT
MATTHEW P. SEAMON
Senior Litigation Counsel

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the reply contains 2511 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

                                          */s/ Mary L. Larakers*
                                          MARY L. LARAKERS

**CERTIFICATE OF SERVICE**

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: March 31, 2025

/s/ *Mary L. Larakers*
Mary L. Larakers
Senior Litigation Counsel